**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Danny William Beaver, | No. CV-24-02795-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Daniel William Beaver ("Plaintiff") seeks this Court's review of the Social Security Administration ("SSA") Commissioner's (the "Commissioner") denial of his application for Social Security Disability Insurance ("SSDI") benefits. (Doc. 9). The matter is fully briefed. (Docs. 11, 12). The Court has reviewed the briefs and the Administrative Record (Docs. 6-1–6-10, "AR.") and, for the reasons set out below, concludes that this matter shall be remanded for further proceedings.

## I.     Procedural Background

On March 21, 2022, Plaintiff filed an application for SSDI, alleging a disability onset of September 1, 2020. (AR. 25). Plaintiff's claims were first denied on July 21, 2022, and again upon reconsideration on May 3, 2023. (*Id.*) Following these denials, Plaintiff filed a request for a hearing, and a telephonic hearing was then held before the ALJ on August 22, 2023. (*Id.*) The ALJ issued her decision, determining that Plaintiff was not disabled, on October 19, 2023. (*Id.* at 42).

On May 22, 2024, the Appeals Council denied Plaintiff's request for review of the

ALJ's decision. (*Id.* at 10). Thus, the ALJ's October 19, 2023 decision was adopted as the agency's final decision. (*Id.* at 10–12). The Appeals Council granted Plaintiff's request for additional time to file a civil action. (*Id.* at 8). Plaintiff subsequently filed the present action on October 16, 2024. (*See* Doc. 1).

**II.     The ALJ's Decision**

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). First, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).[1] If not, the ALJ proceeds to the fifth step, where they determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines no such work is available, then the claimant is disabled. *Id.*

Here, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since September 1, 2020. (AR. 27). Second, the ALJ determined that Plaintiff suffered from severe impairments in the form of obesity; posttraumatic stress disorder ("PTSD"), status-post biceps tendon rupture with repair, and a history of knee impairment. (*Id.*) And at the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in

---

[1] A claimant's residual functional capacity is defined as their maximum ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1545(a), 404.1520(e), 416.920(e).

Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id.* at 28–31).

At step four, the ALJ found that Plaintiff has the RFC "to perform light work as defined in 20 CFR 404.1567(b) except he can frequently reach; can have no exposure to hazards such as moving machinery and unprotected heights; cannot be exposed to loud noise; and is able to perform simple, routine tasks involving simple work-related decisions and simple instructions, not involving public contact, and with few changes in the work setting." (*Id.* at 32–39). Based on Plaintiff's RFC, Plaintiff was found to be unable to perform any past work as "the demands of said work exceed the current residual functional capacity." (*Id.* at 40). Fifth and finally, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and he was therefore not disabled under the Social Security Act. (*Id.* at 41–42).

**III.　Standard of Review**

In considering whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion, considering the record as a whole. *Id.*

To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn*, 495 F.3d at 630. The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947,

954 (9th Cir. 2002).  Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.* at 954 (citations omitted).

### IV.   Discussion

Plaintiff contends the ALJ erred in rendering its decision for two reasons.  First, Plaintiff argues the ALJ improperly discounted Plaintiff's symptom testimony.  Second, Plaintiff argues the ALJ improperly rejected certain medical opinions.  The Court will address each of Plaintiff's arguments in turn.[2]

### A.   Plaintiff's Symptom Testimony

Plaintiff contends that the ALJ failed to give clear and convincing reasons supported by substantial record evidence for rejecting Plaintiff's subjective symptom testimony. (Doc. 9 at 12–13).  More specifically, Plaintiff argues that the ALJ's "general medical summary" does not satisfy the requirements to discredit Plaintiff's testimony, and Plaintiff's daily activities do not serve as reasons to disregard his symptoms testimony when there was no discussion of the activities' frequency or duration. (Id. at 13–20).  The Commissioner disagrees, arguing that the ALJ reasonably concluded that Plaintiff's more extreme allegations of debilitating mental limitations were inconsistent with objective evidence as well as his treatment history and activities.  (Doc. 11 at 5–13).

An ALJ must perform a two-step analysis when determining whether a claimant's testimony about subjective pain or symptoms is credible. *Lingenfelter*, 504 F.3d at 1035–1036 (9th Cir. 2007).  First, the ALJ must determine whether Plaintiff presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged.  *Garrison*, 759 F.3d at 1014.  "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.' "  *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th

---

[2] Plaintiff's contentions only regard his mental impairments, not his physical ones.  (Doc. 9 at 3).  Therefore, the Court's review will be limited to the record on Plaintiff's mental disabilities.

Cir. 1996)). Second, if there is no evidence of malingering, the ALJ may reject the Plaintiff's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015; *Brown-Hunter*, 806 F.3d at 488–89.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings about the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id* (quoting *Lingenfelter*, 504 F.3d at 1040).

Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Albeit an ALJ may not "effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022).

Here, the ALJ summarized Plaintiff's symptom testimony as follows:

> The claimant reported that he stopped working due to PTSD symptoms, including difficulty staying on task and problems interacting with others. He stated that he has undergone consistent therapy and counseling, and that he takes multiple medications, which help to minimize his symptoms. The claimant reported that he has problems going into stores but that he is able to prepare meals and perform household chores such as laundry…The claimant reported that he has a service dog but that he continues to experience panic attacks when having to go out and interact with others, as well as occasional

nightmares with difficulty multitasking. He reported difficulty with cooking two things at once or trying to do two things at once. He stated he had aquariums, which he had overflowed and that he had burned meals. The claimant further testified he became easily agitated or angered and that if he asked family members for help and they did not give him help he got angry and this caused arguments.

(AR. 34). As to the first step, the ALJ determined that Plaintiff's impairments could reasonably be expected to produce the symptoms alleged. (*Id.*) Nonetheless, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*)

After noting that Plaintiff alleged that he is primarily unable to work because of his PTSD, the ALJ recounts the prior years of Plaintiff's PTSD therapy records. (*Id.* at 35–37). The issue with the ALJ's summary of the records is that it is just that–a summary of waxing and waning symptoms. "[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter*, 806 F.3d at 494). The ALJ neglected to "identify what testimony [was] not credible and what evidence undermine[d] the claimant's complaints." *Ghanim*, 763 F.3d at 1163. For example, the ALJ neither explained (a) why smatterings of normal findings did not support Plaintiff's symptom testimony; nor (b) why the normal findings should be given more weight than the abnormal findings to discredit Plaintiff's symptom testimony. *See Curtis v. Comm'r of Soc. Sec. Admin.*, 2018 WL 6418486, *7 (D. Ariz. 2018) (citing *Garrison*, 59 F.3d at 1009). The ALJ's discussion of the objective medical evidence, absent any reasons for credibility determinations, is insufficient to reject Plaintiff's testimony under the clear and convincing standard. *See Lambert*, 980 F.3d at 1277–78; *Burrell v. Colvin*, 775 F.3d 1133, 1137–38 (9th Cir. 2014).

The only time the ALJ provides any reasoning for discrediting Plaintiff's symptom testimony is in her discussion of Plaintiff's daily activities. However, substantial evidence does not support the ALJ's conclusion that Plaintiff's daily activities were inconsistent with

her symptom testimony.  The ALJ states:

> [T]here is no question the claimant has a history of treatment for multiple medical conditions, which do prevent him from returning to his past work. However, the record does not support a finding of an inability to perform all work…The claimant has alleged he has been disabled primarily due to post traumatic stress disorder. However, the claimant has engaged in activities of daily living that are not as limited as would be expected given his reports of disabling symptoms and limitations. While he has reported anxiety in crowds, he attended a wedding and military reunion, which would require exposure to a group of people. He has reported difficulty concentrating, but as discussed in detail above, he has reported to treating mental health providers he isolated himself in his garage to work on hobbies and he testified he is able to perform some activities at home. He has reported exercising regularly and he has traveled on several occasions. While travel and disability are not necessarily inconsistent, in this case, the claimant's travel tends to suggest his symptoms are not as limiting as alleged.

(AR. 37).

However, a plaintiff's ability to carry out "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  *Orn*, 495 F.3d at 639 (internal quotations and citations omitted).  Here, the ALJ made no such indication.  Therefore, the Court does not find that these activities serve as clear and convincing reasons to reject Plaintiff's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049–50 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability [o]ne does not need to be utterly incapacitated in order to be disabled."); *Jeffrey B. v. Saul*, 2020 WL 6462395, *8 (N.D. Cal. 2020) (same).  Not to mention, the ALJ does not address Plaintiff's testimony that he would burn food while cooking or overflow his aquarium in the performance of these daily tasks.

In addition, the ALJ highlighted Plaintiff's attendance at a wedding and military reunion over the relevant years.  Two isolated occurrences of Plaintiff being around people do not constitute clear and convincing reasons to discount Plaintiff's symptom testimony.

*See*, *e.g.*, *Milton v. Commr. of Soc. Sec.*, 2018 WL 1788077, *4 (D. Or. 2018) ("An isolated instance of being on her feet one weekend does not constitute a clear and convincing reason to discount [the plaintiff's] subjective symptom testimony."); *Schwanz v. Colvin*, 2014 WL 4722214, *16 (D. Or. 2014) ("[Plaintiff's] visitation with a friend does not undermine symptom [plaintiff's] testimony. Rather than going to "friends' homes," as the ALJ claims [plaintiff] testified, [plaintiff] testified to seeing one friend."); *see Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard.").

Also, it is not clear and the ALJ does not explain how the travel Plaintiff testified to undermines his PTSD symptom testimony. *Ong v. Commr. of Soc. Sec. Admin.*, 2018 WL 3323169, *10 (D. Ariz. 2018) ("Evidence that Plaintiff traveled two times during the relevant period, without further detail, is not a clear and convincing reason for discounting her symptom testimony."); *Colandrea v. Commr. of Soc. Sec. Admin.*, 2025 WL 3144684, *5 (D. Ariz. 2025) ("[T]he ALJ provided no specifics about that travel, nor did she explain how they undermined [the plaintiff's] symptom testimony.").

Overall, the ALJ's discrediting of Plaintiff's symptom testimony was not supported by clear and convincing reasons.

## B. Dr. White's Medical Opinion

Plaintiff next argues that the ALJ erred by rejecting the opinion of Dr. Amy White without sufficient explanation and without proper consideration of the supportability and consistency factors. (Doc. 9 at 21–24). Dr. White is a psychologist whom Plaintiff has seen over several years for the treatment of his PTSD symptoms. (*Id.* at 3).

An ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source" and "explain how [it] considered the supportability and consistency

factors' in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b)).  The SSA regulations provide that the most important factors to consider when evaluating the persuasiveness of medical opinions are "supportability" and "consistency."  20 C.F.R. § 404.1520c(a).  Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.' " *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  Consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

*Woods* makes clear that to properly reject a medical opinion under the substantial evidence standard, the ALJ "must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings."  *Id*. (quoting 20 C.F.R. § 404.1520c(b)).

In rejecting the opinion of Dr. White, the ALJ stated:

> Amy White, Psy.D., opined in June of 2022 that he was "very limited" in his social interactions; that he has difficulty making decisions, being flexible, and adapting to changes; that he becomes easily overwhelmed; and that he struggled with concentration (Ex. 14F/4-8). The undersigned finds this assessment generally unpersuasive. Although it is supported with some explanation and is based on actual treatment and observations, these general statements are vague and of limited probative vale [sic] in assessing the claimant's specific functional limitations. Moreover, the longitudinal evidence of record is more consistent with the ability to perform unskilled work with no public contact.

(AR. 40).  Just as seen above, the ALJ then proceeds to recount Plaintiff's treatment records of waxing and waning symptoms without explaining how any of the evidence is more or less consistent with Dr. White's assessment.  "The ALJ did indeed cite Plaintiff's treatment history but made no connection between that treatment history and Dr. [White's] opinion." *Willard v. Saul*, 2021 WL 2073737, *8 (E.D. Cal. 2021).  Citing evidence without explaining how it supports the ALJ's conclusions is insufficient to comply with the

requirement that ALJs articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decisions.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Moreover, to the extent Dr. White's opinions were discounted for vagueness, this is an insufficient reason to do so.  An ALJ may not reject a physician's opinion based merely on broadness or vagueness.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  To the extent that a physician's report is ambiguous or inconsistent, the ALJ is required to recontact the issuing physician.  20 C.F.R. §§ 404.1512(e); 416.912(e); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  Therefore, the ALJ erred in her rejection of Dr. White's opinion.

**C.    Harmless Error**

An ALJ decision will not be reversed for errors that are harmless.  *Stout v. Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990)).  However, a reviewing court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ … could have reached a different disability determination."  *Id.* at 1056.  In other words, legal errors are harmless only if they are inconsequential to the non-disability decision.  *Id.* at 1055.

Here, the Court is unable to conclude that the ALJ's failure to state legally sufficient reasons for discounting Plaintiff's subjective symptom testimony or Dr. White's medical opinion was harmless.  The ALJ's RFC determination necessarily relied on the ALJ's rejection of Plaintiff's symptom testimony as well as Dr. White's opinion.  The Court realizes that the RFC accounted for Plaintiff's difficulty in public, but it did not take into consideration the other discredited portions of Plaintiff's testimony and Dr. White's opinion.  In consequence, the ALJ's errors were not harmless.

**V.    Remand**

Once a court has determined an ALJ's decision contains harmful error, it maintains discretion to remand the case for additional proceedings or for an award of benefits.

*Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998) (citing *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). This is "the proper course, except in rare circumstances[.]" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Conversely, under the "credit-as-true" rule, the court has discretion to remand for an award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted).

Plaintiff argues his case meets the credit-as-true standard because there are no "significant factual conflicts," or "crucial questions as to the extent of [claimant's] impairment" that require resolution before a finding of disability. (Doc. 9 at 25 quoting *Treichler*, 775 F.3d at 1104–1105 (emphasis omitted)). However, the Court finds it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further analysis of Plaintiff's subjective symptom testimony and evaluation of the medical evidence are necessary before a proper determination of Plaintiff's disability can be made. Therefore, the Court, in its discretion, finds that a remand for further proceedings is appropriate here.

Accordingly,

**IT IS ORDERED** that Administrative Law Judge's October 19, 2023, decision is reversed and remanded for additional proceedings consistent with this Order.

/ / /

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

Dated this 19th day of March, 2026.

Honorable Diane J. Humetewa
United States District Judge